JOHN F. ARNOLD, Administrator,

*vs.*

CONNECTICUT MUTUAL LIFE INSURANCE CO.

Piscataquis.    Opinion June 26, 1901.

*Life Insurance.    Suicide.    Insanity.*

In an action upon a policy of life insurance, it appeared that the insured committed suicide.

The policy stipulated, among other things, that the defendant company should not be liable in the event of the self-destruction of the insured in any form except upon proof that the same should be the direct result of disease or of accident occurring without the voluntary act of the insured; nor in case the death of the insured resulted from any disease produced by, or resulting from the occasional or habitual use of, alcoholic or narcotic stimulants.

The defendant pleaded, by brief statement, that the death of the insured was the direct result of self-destruction by him and not of disease or accident occur-

ring without his voluntary act, and that, if the self-destruction of the plaintiff's intestate was the direct result of disease occurring without his voluntary act, such disease was procured by, or resulted from the occasional or habitual use of, alcoholic stimulants.

*Held;* that the only questions for the jury are those arising under the foregoing stipulations and plea, all other facts necessary for the maintenance of the action being admitted; *also,* that the verdict for the plaintiff is not manifestly wrong and should, therefore, be sustained.

The defendant company also claimed that the fact of insanity was not proved by the testimony in behalf of the plaintiff, and contended that the fact, which appeared in testimony, that during the period above named the deceased attended to his business as usual and had an active interest in public affairs, established his sanity.

*Held;* whether the insured was insane and whether his self-destruction was the direct result of such insanity were questions for the jury. After a careful examination of the testimony, we cannot say that the jury erred in deciding these questions in favor of the plaintiff. The case does not show that he ever drank to excess or ever became intoxicated.

On motion by defendant. Motion overruled.

Action of assumpsit brought for the recovery of the amount of a life insurance policy, issued by the defendant corporation on the life of Eugene A. Arnold, the plaintiff's intestate, in 1886. The verdict was for the plaintiff, and the defendant moved for a new trial, on the ground that the verdict was against law, evidence and the weight of evidence.

*H. Hudson* and *C. W. Hayes,* for plaintiff.

*C. F. Woodard,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, FOGLER, PEABODY, JJ.

FOGLER, J. Assumpsit upon a policy of insurance, dated February 27, 1886, issued by the defendant company upon the life of the plaintiff's intestate, Eugene A. Arnold, who committed suicide on the 16th day of March, 1899.

The verdict was for the plaintiff and the defendant brings the case here upon a motion for new trial.

The policy stipulated, among other things, that the defendant company should not be liable in the event of the self-destruction of

the insured in any form except upon proof that the same should be the direct result of disease, or of accident occurring without the voluntary act of the insured; nor in case the death of the insured resulted from any disease produced by, or resulting from the occasional or habitual use of, alcoholic or narcotic stimulants.

The defendant pleaded, by brief statement, that the death of the insured was the direct result of self-destruction by him and not of disease or accident occurring without his voluntary act, and that, if the self-destruction of the plaintiff's intestate was the direct result of disease occurring without his voluntary act, such disease was produced by, or resulted from the occasional or habitual use of, alcoholic stimulants.

The only questions for the jury were those arising under the foregoing stipulations and plea, all other facts necessary for the maintenance of the action being admitted.

The plaintiff contended that, at the time of his death, the insured was suffering from that form of insanity known at melancholia and that his self-destruction was the direct result of that disease. The defense denied the existence of such disease.

The presiding justice, among other instructions, to none of which exceptions are taken, instructed the jury that the burden of proving insanity, by a preponderance of testimony, was upon the plaintiff; and, further, that suicide of itself is no evidence of insanity, and that the fact that the insured took his own life should not be taken or treated as evidence that he was at the time insane.

As tending to prove insanity, the plaintiff introduced testimony to the effect that the insured had a wife and two children of tender years; that his relations with his family had always been pleasant and that he had no business or financial troubles; and also testimony tending to prove that for some few weeks next preceding his death, the insured was melancholy, restless, nervous, was troubled with loss of sleep and loss of appetite, had the habit of starting up suddenly, of biting his finger nails, was accustomed to immoderate laughter without known cause, and, in conversation, of going from one subject to another without apparent meaning. The plaintiff also introduced expert physicians, who testified that in their opinion

the symptoms above stated indicated insanity.    There was also testimony that the grand-father and two other relatives of the insured had been insane, and from these facts it was argued that the insured had an hereditary tendency to insanity.

The defense claimed that the fact of insanity was not proved by the testimony in behalf of the plaintiff, and contended that the fact, which appeared in testimony, that during the period above named the deceased attended to his business as usual and had an active interest in public affairs, established his sanity.

Whether the insured was insane and whether his self-destruction was the direct result of such insanity were questions for the jury. After a careful examination of the testimony, we cannot say that the jury erred in deciding these questions in favor of the plaintiff.

The defense contends that, even if the insured should be proved to have been insane at the time of his death, such insane condition resulted from his occasional or habitual use of alcoholic stimulants. The testimony relied upon, in support of this position, comes from the widow of the insured upon cross-examination.    She testified that she was married to her husband in 1890 ; that she first discovered that her husband was accustomed to drink liquors about two years after their marriage; that "he didn't drink a great deal— once in a while, when he used to go off fishing and gunning—never did around home very much."

About three years before he died, he was treated for about four weeks at the "Keely Cure" and after such treatment abstained from the use of alcoholic liquors until about six months before his death, when he resumed the habit to some extent.    The case does not show that he ever drank to excess or ever became intoxicated.

The defense offered the testimony of no witness tending to prove that the insured ever drank alcoholic stimulants at any time or on any occasion.    We are of opinion that the jury were justified in finding for the plaintiff upon this branch of the case.

*Motion overruled.*